# Exhibit A

**FINRA DISPUTE RESOLUTION, INC.**

| | |
|---|---|
| JEFFERIES, LLC | : |
| Claimant, | : |
| v. | : **FINRA CASE NO.** |
| JON A. GEGENHEIMER, | : |
| Respondent. | : |

**STATEMENT OF CLAIM**

Claimant Jefferies, LLC ("Jefferies") hereby brings this Statement of Claim against Respondent Jon A. Gegenheimer ("Gegenheimer") and alleges as follows:

**Introduction**

1. This is an action by Jefferies to recover $1,000,000 in liquidated damages that Gegenheimer owes, but refuses to pay, to Jefferies pursuant to a May 18, 2016 Agreement ("Agreement") entered into between Jefferies and Gegenheimer. (A copy of the Agreement is attached hereto as Exhibit A.) Gegenheimer agreed to join Jefferies as a managing director specializing in mergers and acquisitions in the West Coast Technology Group of its Investment Banking Division on or before August 17, 2016. Gegenheimer further agreed that, if he breached the Agreement and did not join Jefferies, he would pay Jefferies liquidated damages in the amount of $1,000,000. *See* Ex. A at V, B. On May 24, 2016, Gegenheimer knowingly breached the Agreement and informed Jefferies that he would not join Jefferies. Despite demand by Jefferies, Gegenheimer has failed to fulfill his obligation to pay Jefferies the agreed upon liquidated damages for his breach. Accordingly, Jefferies has been forced to initiate this action to recover $1,000,000 in liquidated damages as well as other damages and costs.

1

2.      Gegenheimer's breach has left Jefferies without adequate West Coast mergers and acquisitions ("M & A") coverage to the Technology sector, which is one of the largest sources of investment banking revenue in the Technology sector. As a result of Gegenheimer's breach of the Agreement and the resultant void left in Jefferies' M&A coverage to the Technology sector, Jefferies has suffered and will continue to suffer significant lost business opportunities that are not capable of precise estimation. In addition, due to practical factors, it is unlikely that Jefferies can fill the void left by Gegenheimer's breach at any time in 2016 and, even if it could fill that void, Jefferies would need to incur substantial compensation expenses that it would not have incurred absent Gegenheimer's breach.

3.      As set forth in more detail below, as a result of Gegenheimer's breach of the Agreement, Jefferies has and will continue to suffer lost business opportunities and other financial damage that exceeds the $1,000,000 in liquidated damages agreed to by the parties. Accordingly, the liquidated damages provision in the Agreement is enforceable under New York law and should be awarded to Jefferies. Jefferies requests that this Panel order Gegenheimer to pay the $1,000,000 in liquidated damages required by the Agreement, Jefferies' attorneys' fees and costs in this matter, and any further damages or other relief the Panel may deem just and proper.

**The Parties**

4.      Jefferies is a FINRA member firm with its headquarters located at 520 Madison Avenue, New York, New York.

5.      Gegenheimer is a FINRA associated person and is currently registered with Credit Suisse Securities (USA) LLC ("Credit Suisse"), a FINRA member firm. Gegenheimer works for Credit Suisse in San Francisco, California.

**Venue and Governing Law**

6.      The Agreement provides that any arbitration proceeding brought with respect to matters related to the Agreement "shall be brought before FINRA in the Borough of Manhattan in the State of New York." *See* Ex. A, at V, I. The Agreement also provides that it shall be governed by the laws of the State of New York. *See* Ex. A, at V, I.

**Factual Background**

**A.      Jefferies' Search for a New Managing Director in its Technology Group**

7.      In late November 2015, Jefferies set out to hire a new managing director in its West Coast Technology Group specializing in M&A. Jefferies search was necessitated by the resignation of the only managing director in its West Coast Technology Group with a specialization in M&A who supported the M&A needs of the West Coast Technology coverage officers.

8.      Jefferies began the lengthy process of filling this position by engaging the executive search firm Heidrick & Struggles ("Heidrick") to assist with its search.

9.      Heidrick identified and reached out to qualified potential candidates for the position, including Gegenheimer, who was employed in Technology M&A at Credit Suisse. Thereafter, several potential candidates, including Gegenheimer, expressed their strong interest in the position and engaged with Jefferies in a lengthy recruitment process that included several interviews.

**B.      Gegenheimer's Agreement with Jefferies**

10.     Jefferies considered several qualified applicants and, by March of 2016, had determined that Gegenheimer was the best candidate for the position. At that time, Jefferies informed Gegenheimer that it intended to extend him an offer of employment. Gegenheimer communicated to Jefferies that he was interested in joining Jefferies, and Jefferies and

3

Gegenheimer negotiated Gegenheimer's compensation, start date, and other terms of employment which would ultimately be memorialized in the Agreement.

11.     Gegenheimer and Jefferies negotiated the terms of the Agreement at arm's length. Notably, Gegenheimer is a highly sophisticated and experienced professional. In particular, as an investment banker specializing in mergers and acquisitions, Gegenheimer is very familiar with provisions like the liquidated damages provision in his Agreement with Jefferies. During the negotiation of the terms of the Agreement with Jefferies, Jefferies' Executive Vice President, Christopher Kanoff, specifically discussed the liquidated damages provision with Gegenheimer. Gegenheimer understood the liquidated damages provision and its implications.

12.     On May 18, 2016, Jefferies and Gegenheimer executed the Agreement.

13.     Gegenheimer agreed on May 18 that he would begin his employment with Jefferies at a mutually agreeable time, on or before August 17, 2016.[1] *See* Exhibit A at p. 1.

14.     Under the terms of the Agreement, Gegenheimer was to be generously compensated for his services for Jefferies.

15.     Specifically, the Agreement provided that Gegenheimer was to receive a total of $1,370,834 of compensation in his first year alone, consisting of a salary of not less than $350,000 (*See* Exhibit A at I, A.), a bonus for the fiscal year 2016 in an amount not less than $720,834, which was to be paid on or before February 28, 2017 ("2016 Bonus") (*See* Exhibit A at I, B) and $300,000 to replace the deferred compensation that he would forfeit from Credit Suisse by resigning and joining Jefferies ("Replacement Cash"). The Replacement Cash was to be paid as soon as practicable following Gegenheimer joining Jefferies. *See* Exhibit A at II, A.

---

[1] Gegenheimer is subject to a 90 day "garden leave" agreement with Credit Suisse pursuant to which he is required to give Credit Suisse 90 days' notice of his intent to resign. *See* Exhibit A at p. 8.

4

16. In the Agreement, Gegenheimer was obligated to pay liquidated damages to Jefferies in the event that he failed to commence employment with Jefferies. Specifically, the Agreement provided:

> If during the period beginning from the date you execute this Agreement until your Start Date (the "Interim Period"), you fail to commence employment by August 17, 2016, you agree to pay Jefferies $1,000,000 as liquidated damages ("Liquidated Damages"), which represent only an approximation of a portion of the anticipated loss created by such a violation. For the avoidance of doubt, this Liquidated Damages provision is applicable only if you voluntarily fail to commence employment with Jefferies (except as a result of Jefferies' written withdrawal of this offer): (a) because you return as an employee of Credit Suisse or (b) to engage in Competitive Activity (as defined in the Jefferies Employee Handbook). You agree the Liquidated Damages are reasonable and do not operate as a penalty, but reflect Jefferies' reasonable approximation of a portion of its anticipated loss as a result of Jefferies' reliance on your commitment to render services pursuant to this Agreement by your Start Date, Jefferies' forbearance in holding the position of Managing Director in its Investment Banking Division open for you and not hiring another individual for this position during the Interim Period, and all costs incurred by Jefferies to fill the Investment Banking Division Managing Director Position. Nothing in this section shall prevent Jefferies from recovering its actual damages exceeding the Liquidated Damages, and Jefferies shall have the right to avail itself of all other available remedies.

*Id.* at ¶ V, B.

17. Similarly, Jefferies was obligated to pay Gegenheimer liquidated damages in the event Jefferies failed to fulfill its obligations under the Agreement. Specifically, the Agreement stated: "If, following your acceptance of this offer and the date of your resignation from your current employer but prior to the State Date, Jefferies rescinds the offer or materially changes the term of the offer to constitute Good Reason as defined herein, Jefferies will treat you as if your

employment commences and was terminated by Jefferies without Cause (i.e., you will be paid the 2016 Bonus and the 2017 Bonus and the Replacement Cash)." Ex. A at ¶ V, F.

18. Accordingly, upon signing the Agreement, both parties were obligated to pay liquidated damages if they failed to fulfill their obligations under the Agreement.

19. These liquidated damages provisions, like all of the other provisions of the Agreement, were freely negotiated at arm's length between Jefferies and Gegenheimer.

20. The Agreement also provides that Gegenheimer will pay "all costs associated with the collection by Jefferies of its rights under this Agreement, including reasonable attorneys' fees, provided Jefferies is the prevailing party in such enforcement action." Ex. A. at III, C. Gegenheimer further agreed that he "will not assert any defenses, rights of set-off, or counterclaims as a reason for not fully repaying any amounts due under this Agreement." Ex. A. at III, C.

C. **Gegenheimer's breach of the Agreement**

21. On May 24, 2016, Gegenheimer informed Jefferies that he would not join Jefferies as agreed. Gegenheimer stated he was going to remain with Credit Suisse. Upon information and belief, Gegenheimer engaged Jefferies in the recruitment process and in negotiating the Agreement in order to increase his bargaining power with Credit Suisse and to ultimately obtain more favorable employment terms at Credit Suisse. Upon information and belief, to that end, shortly after signing the Agreement, Gegenheimer disclosed the terms of the Agreement to Credit Suisse and used this information to induce Credit Suisse to offer him increased compensation and a promotion. Accordingly, Gegenheimer willfully breached the Agreement.

**D.   Due to Gegenheimer's breach, Jefferies has been left with a void in its coverage that cannot reasonably be filled this year**

22.   Due to Gegenheimer's breach of the Agreement, Jefferies has been left without adequate investment banking M&A coverage in the technology sector, which is one of the largest fee pools in that sector.

23.   Importantly, Jefferies' need for the coverage that Gegenheimer was to provide is even more critical now than it was when Jefferies first identified Gegenheimer as its candidate of choice. This is because just prior to Gegenheimer signing the Agreement to join Jefferies, Jefferies entered into agreements to hire several technology investment bankers from Credit Suisse, consisting of 5 senior managing directors in Technology, none of whom specialized in M&A, but all of whom will join Jefferies in August 2016 and will require M&A support. This brings the number of West Coast Technology coverage officers to 9, all of whom need M&A support. Jefferies expected that, in addition to his other responsibilities, Gegenheimer would help provide M&A support to that group.

24.   Subsequent to these hirings, Jefferies expanded its search and sought to hire 2 managing directors specializing in Technology M&A to support its 9 West Coast Technology coverage officers.

25.   While Jefferies has been able to recently hire one managing director to fill its West Coast Technology M&A needs, it has been unable to find another Technology M&A managing director to fill the role that Gegenheimer had contractually agreed to fill.

26.   Jefferies will be unable to fill the void caused by Gegenheimer's breach before early 2017 at the earliest due to both practical and economic considerations. This is because as a practical matter, the process to select a replacement candidate and negotiate the terms of an offer agreement with that candidate is a lengthy one. Indeed, Jefferies first started to plan its search in

7

late November 2015, but did not sign the Agreement with Gegenheimer until May 18, 2016. Furthermore, it is likely that any replacement candidate would have a "garden leave" notice provision requiring at least 90 days' notice to his or her current employer.

27. Given the estimated amount of time it would take Jefferies to identify a replacement candidate, negotiate the terms of an offer agreement with that candidate, and for that candidate to give his or her 90-day or more required notice to his or her current employer, it is unlikely that a candidate could join Jefferies before early 2017, causing Jefferies to lose months of fee income related to M&A in the technology sector.

28. Significantly, should Jefferies be able to hire a qualified replacement candidate before the end of 2016, Jefferies will need to pay that candidate an annual bonus for the full year of 2016, as she or he would forgo their 2016 bonus at her or his current firm. Accordingly, Jefferies will have to offer any qualified candidate a salary and a bonus comparable to the salary and 2016 Bonus that was to be paid to Gegenheimer pursuant to the terms of the Agreement. However, Jefferies would be paying a full year's bonus for virtually no time worked by the candidate at Jefferies for 2016.

29. To the contrary, had Gegenheimer joined Jefferies by August 17, 2016 as he agreed, Jefferies could reasonably have expected Gegenheimer to generate enough revenue for 2016 to at least cover the expenses associated with his hire.

30. In sum, due to the position Jefferies has been put in by Gegenheimer, Jefferies will be left without adequate M & A coverage in the technology sector for several months, if not longer. Further, if Jefferies hires a qualified candidate before 2017, Jefferies will have to pay that candidate substantial compensation for which it will not receive value.

**E.     Damages to Jefferies due to Gegenheimer's breach of the Agreement**

31.     As set forth above, due to Gegenheimer's breach of the Agreement, Jefferies has been left without adequate West Coast M&A coverage in the Technology sector for the remainder of 2016, if not longer, resulting in substantial lost business opportunities.

32.     In addition to these lost business opportunities, Jefferies will also suffer damages in the form of additional costs associated with hiring a new candidate; the value of the time and effort of its executives expended in finding a new candidate; and the loss of business momentum and active presence with respect to M&A in the technology sector.

33.     While the damages Gegenheimer's breach has and will cause cannot be precisely calculated, the $1,000,000 liquidated damages clause in the Agreement is significantly less than the financial loss Jefferies will suffer.

**Count I**
**Breach of Contract**

34.     Jefferies incorporates the allegations of Paragraphs 1 through 33 as if set forth in full herein.

35.     The Agreement constitutes an enforceable contract between Gegenheimer and Jefferies.

36.     Gegenheimer has breached the Agreement by advising Jefferies that he will not join Jefferies as provided for in the Agreement.

37.     As a direct and proximate result of Gegenheimer's breach of the Agreement, Jefferies has suffered and will suffer damages, including lost future profits, loss of business momentum, active presence, competitive business advantage, loss of opportunity and expectancy, loss of good will and increased recruiting and hiring costs all in an amount which is difficult to estimate.

38.     Although difficult of precise estimation, the $1,000,000 in liquidated damages provided for in the Agreement bears a reasonable proportion to the probable loss anticipated by the parties in the event of breach at the time the Agreement was executed.

## REQUEST FOR RELIEF

**WHEREFORE**, by virtue of the foregoing acts complained of, Jefferies requests that an Award be issued in its favor, and against Gegenheimer, including the following relief:

A.   Liquidated damages pursuant to the Agreement in the amount of $1,000,000;

B.   Actual compensatory damages for breach of the Agreement in the event the liquidated damages clause is not enforced;

C.   Jefferies' attorneys' fees and costs incurred in enforcing the Agreement; and

D.   Any further relief the Panel may deem just and proper.

**BUCHANAN INGERSOLL & ROONEY PC**

By: _____
Andrew Shapren
andrew.shapren@bipc.com
Anne E. Kozul
anne.kozul@bipc.com
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
Tel: (215) 665-8700

Dated: August 19, 2016                Attorneys for Jefferies, LLC

# EXHIBIT "A"

May 18, 2016

Jon A. Gegenheimer, Jr.

Dear Jon:

Jefferies LLC ("Jefferies") is pleased to offer you a position as a Managing Director in the Investment Banking Division ("Division") at our San Francisco, CA office under the terms and conditions described in this agreement ("Agreement"). Your employment with Jefferies will commence at a mutually agreeable time ("Start Date"), on or before August 17, 2016.

I.  **COMPENSATION**

A.  You will receive a salary at the annualized rate of **$350,000**, payable in accordance with Jefferies' payroll practices.

B.  2016 Bonus.

1.  For fiscal year 2016, you will receive a retention bonus of **$720,834** ("2016 Bonus"), which will be subject to a service period. Jefferies will pay you the 2016 Bonus when Jefferies pays bonuses for fiscal year 2016 to similarly situated employees, but no later than February 28, 2017 ("2016 Bonus Payment Date"). If you are not in Good Standing (as defined in Jefferies' Employee Handbook), or Jefferies terminates your employment for Cause (as defined herein), or if you give notice of your intent to resign, without Good Reason (as defined below), prior to the date it pays the 2016 Bonus, you shall not be eligible to receive the 2016 Bonus.

2.  If Jefferies terminates your employment for Cause, or if you give notice of your intent to resign, without Good Reason, during the periods set out below, you must immediately repay the gross, before-tax amount of the 2016 Bonus to Jefferies, in accordance with the schedule below.

| On or prior to the first anniversary of the 2016 Bonus Payment Date | $720,834 |
|---|---|
| After the first anniversary of the 2016 Bonus Payment Date and on or prior to the second anniversary thereof | $576,667.20 |
| After the second anniversary of the 2016 Bonus Payment Date and on or prior to the third anniversary thereof | $432,500.40 |
| After the third anniversary of the 2016 Bonus Payment Date and on or prior to the fourth anniversary thereof | $288,333.60 |
| After the fourth anniversary of the 2016 Bonus Payment Date and on or prior to the fifth anniversary thereof | $144,166.80 |
| After the fifth anniversary of the 2016 Bonus Payment Date | Zero |

3.  Notwithstanding the above, if Jefferies terminates your employment without Cause or you give notice of your intent to resign, with Good Reason, or your employment terminates due to your death or Disability (as defined herein), prior to paying the 2016 Bonus, Jefferies shall pay it to you, and if you have already received the 2016 Bonus, you will not be required to repay any portion of the 2016 Bonus, provided you or your executor or administrator sign (and do not revoke, if applicable) a release

agreement in the form attached hereto as Exhibit 1. The payment under this paragraph shall be within 30 days of receipt of the release agreement.

C.  Restricted Compensation.  A portion of your total compensation (other than your base salary and the 2016 Bonus) may be payable in restricted cash, restricted stock, deferred cash, or other similarly deferred non-cash compensation ("Restricted Compensation"). The percentage of your total compensation payable in Restricted Compensation will be in accordance with guidelines for incentive compensation awards in effect for the relevant fiscal year and such other terms established by Jefferies or its parent, which may include: (a) approval of the award by the Compensation Committee of Jefferies' parent; (b) at the request of Jefferies, your acknowledgement of the Terms and Conditions and/or execution of the repayment agreement governing the award, and (c) your Good Standing on the payment date.

D.  Benefits.  You will be entitled to receive a benefits and Paid Time Off package commensurate with that offered to similarly situated employees in the Division.

E.  Statutory Deductions.  Any salary, bonuses, Restricted Compensation, and/or other compensation described in this Agreement will be subject to all applicable statutory deductions and withholdings.

II.  **REPLACEMENT CASH**

A.  Jefferies will pay you up to $280,000 [handwritten: $300,000] ("Replacement Cash") to replace the deferred compensation that you will forfeit from Credit Suisse because of your Jefferies' employment. Jefferies will determine the actual amount of Replacement Cash following receipt of documentation (in a form acceptable to Jefferies) evidencing a forfeiture because of your employment at Jefferies. Jefferies will value any forfeited stock using the closing price of Credit Suisse stock as of the close on Wednesday, May 18, 2016. You must submit any such forfeiture documentation within thirty (30) days of the Start Date or you forfeit your eligibility for Replacement Cash.  Jefferies will pay the Replacement Cash as soon as practicable following the later of your Start Date and receipt of acceptable forfeiture documentation such as your final statement containing the same or similar information that you have provided already ("Replacement Cash Payment Date"), provided you are in Good Standing on the Replacement Cash Payment Date.

B.  If during the periods set out below, Jefferies terminates your employment for Cause, or if you give notice of your intent to resign, without Good Reason, you must immediately repay the relevant percentage of the gross, before-tax amount of the Replacement Cash to Jefferies in accordance with the schedule below.

| On or prior to the first anniversary of the Replacement Cash Payment Date | 100% |
|---|---|
| After the first anniversary of the Replacement Cash Payment Date and on or prior to the second anniversary thereof | 75% |
| After the second anniversary of the Replacement Cash Payment Date and on or prior to the third anniversary thereof | 50% |
| After the third anniversary of the Replacement Cash Payment Date and on or prior to the fourth anniversary thereof | 25% |
| After the fourth anniversary of the Replacement Cash Payment Date | Zero |

C.      Notwithstanding the above, if Jefferies terminates your employment without Cause or you give notice of your intent to resign, with Good Reason, or your employment terminates due to your death or Disability (as defined herein), Jefferies shall pay it to you if not already paid to you, and if paid to you, you will not be required to repay any portion of the Replacement Cash, provided you or your executor or administrator sign (and do not revoke, if applicable) a release agreement in the form attached hereto as Exhibit 1. The payment under this paragraph shall be within 30 days of receipt of the release agreement.

III.    **TERMINATION**

A.      Your employment with Jefferies is "at will," and Jefferies may terminate your employment at any time, with or without Cause or notice.  You may voluntarily terminate your employment subject to applicable notice periods.

B.      Through 2017, you are required to provide Jefferies with 365 days' written notice of your intention to terminate your employment (the "Notice Period").  Thereafter, you are required to provide Jefferies with 135 days written notice of your intention to terminate your employment (the "Notice Period").  During the Notice Period, you will continue to receive your salary payments at the rate then in effect, but not any bonus, at the regular payroll dates, your fiduciary duties and your obligations to Jefferies as an employee of Jefferies will continue, and you will cooperate in the transition of your responsibilities.  Jefferies shall have the right, in its sole discretion, to direct that you no longer come in to the office during the Notice Period or to shorten the Notice Period.  In determining whether to exercise this right, Jefferies will act solely in its own best interests, and under no circumstances will it take into consideration any request by you that Jefferies direct you to cease coming into the office or shorten the Notice Period.

C.      In the event of an action to enforce this Agreement, you will pay all costs associated with the enforcement by Jefferies of its rights under this Agreement, including reasonable attorneys' fees, provided that Jefferies is the prevailing party in such enforcement action.  You will not assert any defenses, rights of set-off, or counterclaims as a reason for not fully repaying any amounts due under this Agreement.

D.      In the event of an action to enforce this Agreement, Jefferies will pay your costs associated with the enforcement by you of your rights under this Agreement, including reasonable attorneys' fees, provided that you are the prevailing party in such enforcement action. Jefferies will not assert any defenses, rights or set-off, or counterclaims as a reason for not fully paying any amounts due under this Agreement.

V.      **OTHER IMPORTANT PROVISIONS**

A.      Your employment will be subject to Jefferies' written policies including, but not limited to, those contained in the Employee Handbook, Code of Ethics, and General Compliance Policies and Procedures, all of which may, from time to time, be amended, subject to applicable law.  As a condition of your employment, you must review and comply with all of Jefferies' written policies, including, without limitation, the policies regarding notice periods, non-competition, non-solicitation, confidential information, and intellectual property set forth in the Employee Handbook, subject to applicable law.

B.      If during the period beginning from the date you execute this Agreement until your Start Date (the "Interim Period"), you fail to commence employment by August 17, 2016, you agree to pay Jefferies $1,000,000 as liquidated damages ("Liquidated Damages"), which represent only an approximation of a portion of the anticipated loss created by such a violation. For the avoidance of doubt, this Liquidated Damages provision is applicable only if you voluntarily fail to commence employment with Jefferies (except as a result of Jefferies' written withdrawal of this offer): (a) because you return as an employee of Credit Suisse or (b) to engage in Competitive Activity (as defined in the Jefferies Employee Handbook). You agree the Liquidated Damages are reasonable and do not operate as a penalty, but reflect Jefferies' reasonable approximation of a portion of its anticipated loss as a result of Jefferies' reliance on your commitment to render services pursuant to this Agreement by your Start Date, Jefferies' forbearance in holding the position of Managing Director in its Investment Banking Division open for you and not hiring another individual for this position during the Interim Period, and all costs incurred by Jefferies to fill the Investment Banking Division Managing Director position. Nothing in this section shall prevent Jefferies from recovering its actual damages exceeding the Liquidated Damages, and Jefferies shall have the right to avail itself of all other available remedies.

C.      "Disability" shall have the meaning set forth in Jefferies' long-term disability policy as in effect on the date your employment terminates.

D.      "Good Reason" shall mean: (1) requiring you to relocate your primary office outside of the city of San Francisco, other than for business continuity disaster recovery purposes or (2) a material breach of this Agreement, including, but not limited to, a change in your title, or (3) a material and substantial diminution of your duties and responsibilities as compared to other similarly situated MDs in the Division. If you believe that "Good Reason" exists, you shall provide written notice to Jefferies' internal legal counsel specifying the alleged Good Reason within sixty (60) days of your discovery of the initial existence of the alleged Good Reason. If Jefferies cures the Good Reason within a reasonable time (which shall not be more than forty-five (45) days) after receiving such written notice from you), then no Good Reason shall exist. If Good Reason exists, your resignation will constitute a resignation for Good Reason only if it occurs within four (4) months after your discovery that Good Reason has arisen.

E.      Jefferies may terminate your employment for Cause. "Cause" shall mean your:

(a) material breach of any written agreement between you and Jefferies, its parent, subsidiaries or affiliates (together the "Jefferies Companies");
(b) material violation of any material written policy or procedure of the Jefferies Companies as are in effect as of the date such violation occurs, including, but not limited to the Code of Ethics, that could reasonably be expected to result in harm not of an insignificant nature to the Jefferies Companies, their employees or their reputation;
(c) material violation of any written Jefferies policy against discrimination or harassment;
(d) finding of any violation of any material federal, state, local, or foreign securities law, rule, or regulation or any material rule or regulation or by-law of any securities exchange or association or other regulatory or self- regulatory body or agency;
(e) conviction of, or plea of guilty or nolo contendere to, a crime that either could result in your statutory disqualification, or that involves moral turpitude, dishonesty, fraud, wrongful taking of property, or unethical business conduct, or any felony of any nature whatsoever;
(g) failure to obtain or maintain any registration, license, or other authorization or approval reasonably required by Jefferies;

Page 4 of 8

(h) engaging in any act constituting a breach of fiduciary duty, gross negligence, or material misconduct in connection with the performance of your material duties;

(i) refusal or failure to comply with any of the reasonable directions of or procedures established by the Board of Directors of Jefferies' parent, Jefferies' Executive Committee, or your supervisor (unless such directions would result in the commission of an act that is illegal or unethical or otherwise conflicts with this Agreement or requires you to breach a representation or warranty described in Exhibit A); or

(j) material failure or refusal to perform the material duties of your employment.

If Jefferies determines in good faith and reasonably, in its sole and exclusive discretion, that the conduct giving rise to Cause is capable of being cured, Jefferies will give you written notice that conditions giving rise to termination of your employment for Cause exist under (a), (b), (h), (i) or (j) above, and no Cause will exist if you have cured the conditions within thirty (30) business days of such notice. If conditions giving rise to termination of your employment for Cause exist under (g), above, Jefferies shall give you notice of the registration, license or other authorization or approval that you must obtain and a reasonable period of time to obtain it.

F.  If, following your acceptance of this offer and the date of your resignation from your current employer but prior to the Start Date, Jefferies rescinds the offer or materially changes the terms of the offer to constitute Good Reason as defined herein, Jefferies will treat you as if your employment commenced and was terminated by Jefferies without Cause (i.e., you will be paid the 2016 Bonus and the 2017 Bonus and the Replacement Cash).

G.  You acknowledge and agree that the representations, warranties, and disclosures set forth on Exhibit A are truthful and accurate to the best of your knowledge.

H.  This Agreement constitutes the entire agreement between you and Jefferies with respect to the subject matters in this Agreement, and supersedes all prior or contemporaneous negotiations, promises, agreements and representations, all of which have become merged and integrated into this Agreement. The provisions in this Agreement are severable. Any provisions in this Agreement held to be unenforceable or invalid in any jurisdiction shall not affect the enforceability the remaining provisions. In addition, any provision of this Agreement held to be excessively broad as to degree, duration, geographical scope, activity or subject, shall be construed by limiting and reducing it to be enforceable to the extent compatible with the applicable law. Jefferies reserves the right to amend the terms of this Agreement relating to fixed and/or variable compensation as it considers necessary to comply with legal or regulatory obligations in force from time to time.

I.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to its principles or rules of conflicts of laws, to the extent that such principles or rules would require or permit the application of the law of another jurisdiction. You hereby consent that any arbitration proceeding brought with respect to matters related to your employment or this Agreement shall be brought before FINRA in the Borough of Manhattan in the State of New York, or if the parties are permitted to bring such action in a state or federal court, then you hereby consent to the personal jurisdiction of the state and federal courts sitting in the City and State of New York with respect to matters related to your employment or this Agreement, and agree that any action with respect thereto shall be brought in such courts.

J.      Jefferies' rights under this Agreement shall inure to the benefit of Jefferies' successors and assigns. This Agreement is not assignable by you.

K.      This offer is contingent upon verification of your prior employment, the veracity of your employment application and/or resume, your ability to document your identity and eligibility to work in the United States, a completion of a satisfactory background check, a satisfactory compliance check, and your successful passing of our drug test; provided, however, that (a) your background check shall be deemed satisfactory unless it reveals a problem or problems that would adversely affect your ability or suitability to perform your job or would adversely impact Jefferies' reputation; and (b) if Jefferies has any concerns about whether any issue in your background check might cause it to determine that your background check is not satisfactory, Jefferies will provide you with the specific information at issue (including the source) and will provide you a reasonable opportunity to respond and/or to cure . Your employment is contingent upon on your obtaining, within a reasonable period, any registration, license, or other authorization or approval that you are required to maintain or that Jefferies or any affiliate of Jefferies reasonably believes is required in order for you to perform your duties. Jefferies reserves the right to contact former employers to verify information obtained in the interview process. If you fail either to accept this offer of employment by May 18, 2016 or commence employment by August 17, 2016, this offer will become null and void.

L.      If as a result of your becoming employed by Jefferies, Credit Suisse threatens to or initiates any legal action against you, arising out of any allegation that you have joined Jefferies, or any allegation that you have improperly solicited any clients or employees of Credit Suisse, Jefferies will pay reasonable attorney's fees and costs incurred by you as a result of the defense of any such litigation or dispute. In order for you to be entitled to this advancement of defense costs: (i) you must execute this Agreement; (ii) your choice of counsel must be reasonably acceptable to Jefferies; (iii) you must not be in breach of this Agreement, including breach of any warranty or representation set forth in Section I; (iv) you must not have knowingly violated any agreement or policy of Credit Suisse; and (v) you must not have acted in bad faith with respect to Credit Suisse. The reasonable attorney's fees and costs of such counsel will be paid by Jefferies on an ongoing basis within thirty (30) days of its receipt of detailed bills for services rendered (attorney client privileged material shall be redacted from any said bills before submission to Jefferies); provided, however, that before Jefferies shall have an obligation to pay the fees and costs hereunder, you agree to sign an undertaking to promptly repay all amounts advanced pursuant to this advancement of defense costs if: (x) it is determined that you are not entitled to advancement of defense costs hereunder; or (y) you are terminated for Cause during the repayment period for the 2016 Bonus. The foregoing shall not require Jefferies to, and Jefferies will not, indemnify you or hold you harmless with respect to any judgments, verdicts, claims, and settlements that may be made or rendered against you individually or jointly in any such action, except as otherwise required by any other indemnification provision or agreement or applicable law.

M.      You will be covered under the Jefferies Limited Liability Company Agreement, including under Section 7 the "Liability and Indemnification" provision, and that Jefferies will maintain and you will be covered under the D & O Insurance Policy.

N.      This Agreement is intended to comply with the requirements of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), including the exceptions thereto, and shall be construed and administered in accordance with such intent. Notwithstanding any other provision of this Agreement, payments provided under this Agreement may only be made upon an event and in a manner that complies with Section 409A or an applicable exemption. Any payments

under this Agreement that may be excluded from Section 409A either as separation pay due to an involuntary separation from service or as a short-term deferral shall be excluded from Section 409A to the maximum extent possible. Any payments to be made under this Agreement in connection with a termination of employment shall only be made if such termination of employment constitutes a "separation from service" under Section 409A. Notwithstanding any other provision of this Agreement, if at the time of your termination of employment, you are a "specified employee", determined in accordance with Section 409A, any payments and benefits provided under this Agreement that constitute "nonqualified deferred compensation" subject to Section 409A that are provided to you on account of your separation from service shall not be paid until the first payroll date to occur following the six-month anniversary of your termination date ("Specified Employee Payment Date"). The aggregate amount of any payments that would otherwise have been made during such six-month period shall be paid in a lump sum on the Specified Employee Payment Date and thereafter, any remaining payments shall be paid without delay in accordance with their original schedule. If you die before the Specified Employee Payment Date, any delayed payments shall be paid to your estate in a lump sum within ninety (90) days of your death.

O.  You acknowledge and agree that you have read and understand this Agreement, you voluntarily agree to the terms and conditions in this Agreement, and you have been provided with the opportunity to consult with independent legal counsel of your choice prior to executing this Agreement.

If the above terms are acceptable to you, we request that you accept this Agreement by signing and dating the copy enclosed and returning it to Jefferies.

Sincerely,

Chris Kanoff
Executive Vice President
Co-Head of Investment Banking and Global
Head of Industrials

AGREED TO AND ACCEPTED BY:

Jon A. Gegenheimer, Jr.                         5/18/16
                                                 DATE

**EXHIBIT A**

**REPRESENTATIONS, WARRANTIES, AND DISCLOSURES**

I represent, warrant, and covenant to Jefferies LLC ("Jefferies") that:

A.  Except as disclosed below, to the best of my current knowledge and belief, I am not, and have not been, the subject of any investigation, whether by any prior employer, any governmental or regulatory authority, or any self-regulatory organization.

_____
_____
_____

B.  Except as disclosed below, I am not subject to any agreement or policy that would restrict me from directly or indirectly competing with my current or any prior employer, soliciting employees to leave the employ of such employers, or soliciting any clients or customers of such employers. To the extent I am subject to such an agreement or policy disclosed below, I have complied and will comply with it.  (STANDARD CREDIT SUISSE)
_____
_____

C.  Except as disclosed below, to the best of my current knowledge and belief, my performance under this Agreement and as a Jefferies employee does not and will not breach any agreement not to disclose confidential or proprietary information belonging to any other employer or entity. To the extent I am subject to such an agreement, I will not disclose or induce Jefferies or any of its affiliates to use any such confidential or proprietary information.

_____
_____

D.  Except as disclosed below, I do not have a notice requirement to my prior employer. To the extent I have such a notice obligation, I will not commence employment with Jefferies until the expiration of such notice period.  90 DAYS
_____
_____

E.  Except as disclosed below, I have not and will not take or retain any documents or files, whether in hard copy or electronic form, from any previous employment. To the extent I have retained any such documents or files listed below, I have received authorization to do so.

_____
_____

_____          _____5/18/2016_____
Jon A. Gegenheimer, Jr.                                         DATE