UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
JEFFERIES LLC,

                    Petitioner,

          - against -                    **MEMORANDUM AND ORDER**

JON A. GEGENHEIMER,                      19 Civ. 3147 (NRB)

                    Respondent.

---------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

        Jefferies LLC ("Jefferies") petitions and moves this Court to
confirm an award it obtained against Jon A. Gegenheimer
("Gegenheimer") in an arbitration before the Financial Industry
Regulatory Authority ("FINRA").  Gegenheimer cross-moves to vacate
the award.  The Court grants petitioner's motion, denies
respondent's motion, and confirms the award for the following
reasons.


                    I.   **Background**

    A.   **The Agreement between the Parties**

        Petitioner Jefferies is a financial services firm that
maintains a global investment banking practice.  See Pet. to
Confirm Arb. ("Petition") (ECF No. 1) ¶ 6.  Respondent Gegenheimer
is an investment banker specializing in mergers and acquisitions
in the technology sector.  Id.  As of January 2016, Gegenheimer

was employed by Credit Suisse as an investment banker but was dissatisfied with his job. FINRA Arbitration Award ("Award") (ECF No. 47-2) at 8.[1] After weeks of confidential discussions with a recruiter and a Jefferies employee who had been previously employed at Credit Suisse, on May 18, 2016, Gegenheimer was informed by another Jefferies employee ("Mr. K") that Jefferies was ready to offer him a Managing Director position with $1,070,834 in first year salary and bonus. Id. This offer reflected a significant enhancement from Jefferies' initial offer of a non-Managing Director position with between $700,000 and $750,000 in compensation, which Gegenheimer had rejected. Id. On the same day, Gegenheimer expressed his willingness to accept the enhanced offer and went to Jefferies' San Francisco office to sign the offer letter. Id. Upon his arrival at Jefferies' office, he was escorted to a conference room where he was left alone with a copy of the offer letter, which set forth the terms of Gegenheimer's anticipated employment with Jefferies as a Managing Director in the Investment Banking Division at its San Francisco office. Id.; Jacobs Decl., Ex. B., (ECF No. 43-2) at 1.

The offer letter provided that Jefferies would hold the position to be filled by Gegenheimer open for 90 days from its

---

[1]     Because "[a]n arbitrator's error in fact finding does not provide a grounds for reversal," Scinto v. Life Ins. Co. of North Am., 20 F. App'x 45, 47 (2d Cir. 2001), we accept the truth of the arbitration panel's findings of fact and rely on them.

execution, and Gegenheimer would join Jefferies by August 17, 2016.
Id.  Such a time period dovetailed with Gegenheimer's contractual
obligations to Credit Suisse, which required a ninety (90) days
written notice of his intent to resign.  Award at 3.  Specifically,
Section V.B. of the offer letter provides:

> If during the period beginning from the date you
> execute this Agreement until your Start Date (the
> "Interim Period"), you fail to commence employment
> by August 17, 2016, you agree to pay Jefferies
> $1,000,000 as liquidated damages ("Liquidated
> Damages"), which represent only an approximation of
> a portion of the anticipated loss created by such a
> violation.

("LD Clause").  Jacobs Decl., Ex. B at 4.  The same Section further
provides:

> For the avoidance of doubt, this Liquidated Damages
> provision is applicable only if you voluntarily fail
> to commence employment with Jefferies (except as a
> result of Jefferies' written withdrawal of this
> offer): (a) because you return as an employee of
> Credit Suisse or (b) to engage in Competitive
> Activity (as defined in the Jefferies Employee
> Handbook).

("Condition Clause").  Id.

In the course of reviewing the offer letter, Gegenheimer
called Mr. K to note a miscalculation of the reimbursement amount
for the deferred compensation from Credit Suisse that Gegenheimer
would forfeit upon joining Jefferies, and Mr. K agreed to correct
it through a hand-written amendment.  Award at 8.  During the same
call, Gegenheimer also asked Mr. K to send a copy of the offer

letter to Mr. T, who was Gegenheimer's attorney and who had extensively negotiated and advised other Credit Suisse investment bankers regarding their contracts with Jefferies days earlier. Id. In fact, the offer letter presented to Gegenheimer was identical to the final agreement Mr. T negotiated for those other former Credit Suisse investment bankers except for the compensation, title and term. Id.

After Mr. T's receipt of the offer letter, Gegenheimer conferred with him over the phone for 20 to 30 minutes. Id. Thereafter, Gegenheimer also conferred over the phone for another 20 to 30 minutes with his girlfriend, who was then an attorney at the law firm Skadden, Arps, Slate, Meagher & Flom LPP ("Skadden"). Id. During this call, Gegenheimer's girlfriend expressed objections to some provisions of the offer letter, including the LD Clause. Id. Shortly after these phone calls, Gegenheimer signed the offer letter with a hand-written amendment of the deferred compensation reimbursement amount but without any further amendment ("Agreement"). Id. at 10; see also Jacobs Decl. Ex. B, Agreement (ECF No. 43-2).

B. **Breach of the Agreement**

Later on the same day, Gegenheimer advised Mr. W, an employee at Credit Suisse, that he would leave the firm. Award at 9. The next day, on May 19, 2016, Mr. W conveyed to Gegenheimer a proposal by Credit Suisse to raise Gegenheimer's compensation to $1,150,000

4

and promote him to a Managing Director in the next review cycle. Id.  Mr. W further proposed to Gegenheimer that Credit Suisse would indemnify him if the LD Clause is held enforceable.  Id.  After he reached a satisfactory arrangement with Credit Suisse, on May 24, 2016, Gegenheimer advised Jefferies that he was rescinding the Agreement and would not join Jefferies.  Id.  Eventually, Gegenheimer did not join Jefferies by August 17, 2016, as specified in the Agreement.  Id.

      C.  **Arbitration Proceedings**

Pursuant to Section V.I. of the Agreement, Jefferies commenced an arbitration against Gegenheimer by filing a Statement of Claim with FINRA on August 19, 2016.  Petition at ¶ 10.  In its Statement of Claim, Jefferies asserted a breach of contract claim and sought an award of $1,000,000 in liquidated damages.  Id. at ¶ 12.  Jefferies alternatively sought an award of actual compensatory damages in the event the LD Clause is held unenforceable.  Id.  Jefferies also sought attorneys' fees and costs.  Id.  Gegenheimer filed Answer and Counterclaims, and the parties submitted their dispute to FINRA.  Id. at ¶¶ 13, 14.  A panel of three arbitrators ("Panel") presided over the parties' dispute.  Id. at ¶ 15.

D.   **The Award**

At the outset of the arbitration, the parties stipulated to divide the proceedings into two phases.  Id. at ¶ 16.  The sole issue to be resolved at the first phase was the enforceability of LD Clause.  Award at 3-5.  The Panel held a hearing for the first phase on January 24, 2018 and issued an order on January 29, 2018, concluding that the LD Clause was enforceable.  Id. at 5.  In reaching this conclusion, the Panel enforced the Agreement's choice of law provision and applied the New York law.  Id. at 4.  Based on the record, the Panel concluded that Gegenheimer had failed to satisfy his burden to show that the LD Clause was not enforceable.  Id. at 5.  The Panel further found that "the actual damages that would be sustained by Jefferies were inherently incapable of accurate estimation at the time the Agreement was entered into and the liquidated damages amount [was] reasonable in light of the anticipated probable harm."  Id.  Lastly, the Panel rejected Gegenheimer's argument that the LD Clause violated the strong fundamental public policy of California, codified in California Business and Professions Code § 16600 ("Section 16600"), by concluding that Section 16600 did not apply to the Agreement because its terms did not impose any post-employment

restrictive covenant and simply required Gegenheimer to join Jefferies by a particular date. Id.[2]

The Panel held hearings for the second phase of the arbitration to resolve all remaining issues from January 28 to 31, 2019. Petition ¶ 16. Based on the testimony and evidence presented at the hearings, the Panel unanimously ruled for Jefferies on its breach of contract claim and denied each of the affirmative defenses asserted by Gegenheimer. Award at 9-14; 17. Notably, at the second phase, Gegenheimer asked the Panel to reconsider its conclusion on the enforceability of the LD Clause in relation to Section 16600. Id. at 11. Noting the practical effect of the LD Clause, the Panel vacated its prior conclusion that Section 16600 did not apply to the Agreement. Id. at 12. However, the Panel nonetheless concluded that Section 16600 did not render the LD Clause unenforceable. Id. at 14. In reaching this conclusion, the Panel relied on the California Legislature's enactment of California Labor Code Section 925 ("Section 925") and the Delaware Chancery Court's reasoning in NuVasive, Inc. v. Miles, 2017-0720-SG, 2018 WL 4677607 (Del. Ch. Sept. 28, 2018). Id. at 13-14. Although Section 925 generally prohibits enforcement of a

---

[2]    On February 2, 2018, Gegenheimer petitioned the United States District Court for the Northern District of California to vacate the Panel's decision in the first phase. See 18 Civ. 746 (VC), ECF No. 1 (N.D. Cal. Feb. 2, 2018). On March 29, 2018, the court dismissed the petition on the ground that the Panel's conclusion was not a final, complete determination of the claims that was reviewable. See Id., ECF No. 27.

contractual provision in an employment contract that would deprive an employee's rights under California Law, the California Legislature provided an exception for a choice of law provision in an agreement entered into by an employee who was represented by his own legal counsel in negotiations. Id. at 13. In NuVasive, the Delaware Chancery Court inferred from Section 925's provision of such an exception that California's public policy permitted a represented employee to agree to a provision designating non-California law as governing law even if enforcing the choice of law provision would deprive one's rights under Section 16600. Id. The Panel further noted the NuVasive court's reasoning that Section 925's applicability only to contracts entered into on or after January 1, 2017 did not undermine Section 925's significance as an indicator of California's public policy with respect to an agreement executed before then. Id. Based on the NuVasive court's analysis of Section 925 and the Panel's factual findings about Gegenheimer's consultation with Mr. T and his girlfriend—a Skadden attorney—before signing the Agreement, the Panel concluded that Section 16600 did not mandate the voiding of LD Clause. Id. at 14. Thus, the Panel concluded that Gegenheimer had breached the Agreement and had failed to establish any affirmative defense. Id. The Panel awarded Jefferies $1,000,000 in liquidated damages for the breach and, pursuant to the Agreement, additional $483,245.36 in attorneys' fees and costs. Id.

E.    **Procedural History**

FINRA served the Panel's Award on the parties on April 8, 2019. Petition ¶ 17. Jefferies commenced this action the next day, on April 9, 2019, by filing the Petition and contemporaneously filing a motion to confirm the Award. See ECF Nos. 1, 4. On April 19, 2019, Gegenheimer filed a pre-motion letter addressing a proposed motion to stay, transfer or dismiss the action, arguing that the proper venue for resolving this petition was the Northern District of California. See ECF No. 12.

On May 8, 2019, Gegenheimer filed another letter, to which he attached an order issued by Judge Chhabria of the United States District Court for the Northern District of California who was presiding over the case that Gegenheimer had commenced on April 17, 2019 to vacate the Award.[3] See ECF No. 19-1. The Court held a teleconference with the parties on May 9, 2019 and allowed Gegenheimer to file the proposed motion to stay, transfer or dismiss this action, which he filed on May 24, 2019. See ECF No. 22. Shortly after Gegenheimer's motion was fully briefed, on July 23, 2019, Jefferies alerted the Court that Judge Chhabria granted its motion to stay Gegenheimer's action in the Northern District of California. See ECF No. 34.

---

[3]    The case number for the action commenced by Gegenheimer in the United States District Court for the Northern District of California case is 19 Civ. 02086(VC).

The Court heard oral argument on Gegenheimer's motion on August 13, 2019.  See ECF No. 37.  At the conclusion of oral argument, the Court denied the motion from the bench on the grounds that (1) this action preceded Gegenheimer's action in the Northern District of California, and (2) the forum selection clause in the Agreement, which designates New York as the venue for dispute resolution, was enforceable.  See ECF Nos. 39, 40 at 14-17.  Subsequently, Gegenheimer filed a cross-motion to vacate the Award on September 19, 2019, see ECF No. 42, and the Court heard oral argument on the parties' cross-motions on May 20, 2020.  See ECF No. 52.

## II.  **Discussion**

A.  **Legal Standards**

1.  Federal Arbitration Act

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the [C]ourt."  Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984).  The Federal Arbitration Act ("FAA") governs the confirmation and vacatur of an award rendered in an arbitration before FINRA.  See Dishner v. Zachs, No. 16 Civ. 4191 (LGS), 2016 WL 7338418, at *1 (S.D.N.Y. Dec. 19, 2016) (collecting cases).  Under the FAA, "[o]n application for an order confirming [an] arbitration award, the court must grant the order

unless the award is vacated, modified, or corrected as prescribed in [the FAA]." Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008) (internal quotation marks omitted). "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). "The arbitration decision must be confirmed if there is any basis for upholding the decision and if there is even a barely colorable justification for the outcome reached." Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005) (internal quotation marks omitted).

      2.   Manifest Disregard of Law

"In addition to the grounds for vacatur explicitly provided for by the Federal Arbitration Act, an arbitral decision may be vacated when an arbitrator has exhibited a 'manifest disregard of law.'" Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 208 (2d Cir. 2002) (internal citation omitted). Gegenheimer cites the Panel's manifest disregard of law as the sole basis for vacating the Award. "Vacatur on this ground requires a showing that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." KT Corp. v. ABS Holdings, Ltd., 784 F. App'x 21, 24 (2d Cir. 2019). The standard of review under this

11

judicially created doctrine is "severely limited." Gov't of India v. Cargill Inc., 867 F.2d 130, 133 (2d Cir. 1989). Under this standard, "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004). That a party may later regret his agreement to arbitrate his dispute with the counterparty is of no consequence. See Asturiana De Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc., 20 F. Supp. 2d 670, 671 (S.D.N.Y. 1998) (Rakoff J.) ("Ironically, the vaunted informality of arbitration may invite the arbitrator to be arbitrary—for who will ever know the difference? Still, businesses know what they are getting when they agree to arbitrate and cannot be heard to complain unless the results plainly manifest disregard of law and reason.").

B.  **Analysis**

Gegenheimer argues that the Panel manifestly disregarded the law in four aspects. Even a cursory review of Gegenheimer's arguments reveals that he is by and large parroting the arguments that he raised in the arbitration. We conclude that none of the cited aspects of the Panel's conclusion warrants vacatur of the Award and address each of them in turn.

1.  Enforcement of LD Clause

Gegenheimer first argues that the Panel manifestly disregarded a New York law principle that "liquidated and actual

12

damages are mutually exclusive remedies," often called the exclusive remedy rule. U.S. Fidelity and Guar. Co. v. Braspetro Oil Serv. Co., 369 F.3d 34, 71 (2d Cir. 2004) (citing X.L.O. Concrete Corp. v. John T. Brady & Co., 482 N.Y.S.2d 476 (N.Y. App. Div. 1st Dep't 1984)).  Contrary to Gegenheimer's contention, the Panel did not manifestly disregard the exclusive remedy rule under New York law in rendering the Award.  The Panel awarded Jefferies only the liquidated damages amount and did not additionally award any amount in actual damages.  In fact, the LD Clause provides that Jefferies may either recover the liquidated damages amount or that amount plus the amount of actual damages in excess of the liquidated damages amount.  Jacobs Decl. (ECF No. 43), Ex. B (Agreement) § V.B.  Under the latter option, Jefferies' recovery is still capped at the amount of actual damages.  Accordingly, consistent with the exclusive remedy rule, the LD Clause only permits Jefferies to recover the liquidated damages or actual damages, and does not allow Jefferies to recover both.

At bottom, Gegenheimer argues that the Panel manifestly disregarded the law by enforcing the LD Clause, which was per se unenforceable under New York law because it provided Jefferies an option to recover the actual damages.  This argument is without merit.  Contrary to Gegenheimer's characterization of it, the current doctrine on the enforceability of a liquidated damages provision under New York law does not operate as a per se rule.

Under current doctrine, "parties are free to agree to a liquidated damages clause 'provided that the clause is neither unconscionable nor contrary to public policy.'" 172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc., 24 N.Y.3d 528, 536 (N.Y. 2014) (quoting Truck Rent-A-Ctr. v. Puritan Farms 2nd, 41 N.Y.2d 420, 424 (N.Y. 1977)). "A provision which requires damages grossly disproportionate to the amount of actual damages provides for a penalty and is unenforceable." Id. (internal quotation marks omitted). "Whether a provision in an agreement is 'an enforceable liquidation of damages or an unenforceable penalty is a question of law, giving due consideration to the nature of the contract and the circumstances.'" Id. (quoting JMD Holding Corp. v. Congress Fin. Corp., 4 N.Y.3d 373, 379 (N.Y. 2005)) (emphasis added). These cases teach that, under New York law, the enforceability of a liquidated damages provision requires a contextual inquiry, as opposed to a per se rule as Gegenheimer argues.

Gegenheimer primarily cites Jarro Bldg. Indus. Corp. v. Schwartz, 281 N.Y.S.2d 420 (N.Y. App. Div. 2d Dep't 1967), which he repeatedly cited during the arbitration, as the authority to support his position. However, Jarro does not stand for the per se rule proffered by Gegenheimer. In Jarro, the New York Supreme Court, Appellate Division held that a liquidated damages provision, which also granted the non-breaching party an option to sue for actual damages if they exceeded the liquidated damages

14

amount, was not enforceable. Id. at 426. However, contrary to
Gegenheimer's characterization, the court reached this conclusion
in consideration of all relevant circumstances and did not suggest
that the provision at issue was per se unenforceable for providing
an alternative option to seek actual damages. Id. In addition,
there was a more than colorable basis for the Panel to question
the status of Jarro as a controlling authority. In reaching the
conclusion, the Jarro court relied on "the constructional
preference in doubtful cases to hold [a liquidated damages
provision] penal." 281 N.Y.S.2d at 426. However, decades after
Jarro had been decided, Judge Lynch, who was then a judge for this
District, noted:

> Earlier cases tended to navigate [the] competing
> policies [involving liquidated damages provisions]
> by finding a presumption, in close cases to favor
> the construction which makes the sum payable for
> breach of a contract a penalty rather than
> liquidated damages. The balance has now shifted
> towards freedom of contract, as it has become
> increasingly difficult to justify the peculiar
> historical distinction between liquidated damages
> and penalties. Today the trend favors freedom of
> contract through the enforcement of stipulated
> damage provisions so long as they do not clearly
> disregard the principle of compensation.

GFI Brokers, LLC v. Santana, No. 06 Civ. 3988 (GEL), 2009 WL
2482130, at *2 (S.D.N.Y. Aug. 13, 2009) (internal quotation marks
and citations omitted). Such a shift in New York's contract law
could provide a more than colorable basis for the Panel to discount
the strength of Jarro as a controlling authority.

Gegenheimer's reliance on the Second Circuit's decision in U.S. Fidelity and Guar. Co. v. Braspetro Oil Serv. Co., 369 F.3d 34, 71 (2d Cir. 2004), is also unpersuasive because the Panel could reasonably have found it distinguishable.  At issue in that case was the enforceability of "multas moratórias" provision, which "provided for a delay-related 'fine' or 'penalty' in the amount of 0.1% of the total contract price per day, not to exceed 20%."  369 F.3d at 70.  However, under the contracts  at issue in that case, the obligees "were permitted to recover delay-related damages from the [s]ureties as part of the [o]bligees' actual damages."  Id. at 73.  In other words, the contracts at issue "provided for the recovery of actual damages in addition to, and apart from, recovery under the multas moratórias provisions."  Id. (emphasis added). The LD Clause at issue here is distinguishable from such a provision because it does not allow Jefferies to recover the specified liquidated damages amount in addition to the actual damages.  Therefore, the Panel could have reasonably concluded that U.S. Fidelity & Guar. Co. was distinguishable.

Although another case cited by Gegenheimer—Agerbrink v. Model Servs. LLC, 196 F. Supp. 3d 418 (S.D.N.Y. 2016)—does appear to support Gegenheimer's contention, that case alone is insufficient to establish that the rule proffered by Gegenheimer was well-defined and explicit, particularly in light of the fact that the Panel was presented with an arguably conflicting authority: In re

16

First Union Baptist Church, No. 17 Civ. 7184; No. 17 Civ. 7199 (KBF), 2018 WL 770401, at *8-9 (S.D.N.Y. Feb. 7, 2018).  At issue in Agerbrink was a contractual provision that granted the defendants "the option either to retain as liquidated damages all funds then held and/or subsequently received by [one of the defendants] on [the plaintiff]'s behalf or, alternatively, to hold those funds as security toward an anticipated judgment against [the plaintiff], while [the d]efendants pursue other remedies against [the plaintiff]."  196 F. Supp. 3d at 417 (internal quotation marks omitted).  Citing Jarro, the court concluded that the provision at issue was unenforceable because it "guarantee[d] [the d]efendants a minimum recovery regardless of actual damages, while preserving their right to pursue actual damages if they so desire."  Id. at 418 (internal quotation marks omitted).[4]

Similarly at issue in In re First Union was a stipulation by the parties that gave the lender "the option to take the deed [of the security], but it did not require [the lender] to do so."  572 B.R. 79, 98 (S.D.N.Y. Bankr. 2017).  The Bankruptcy Court reasoned that such a provision could not be enforced as a liquidated damages provision because the option granted thereunder "by its terms was most likely to be exercised if at the relevant time the [security]

---

[4]    Also, the Panel could have concluded that Agerbrink was distinguishable on its facts given the coercive features of the contractual provisions at issue in that case, which are not present here.  See Agerbrink, 196 F. Supp. 3d at 418.

was worth more than the outstanding debt." Id. The Bankruptcy Court concluded that such a provision was inherently a penalty under Jarro and, therefore, was not enforceable. Id. However, on appeal, the District Court reversed and held that the Bankruptcy Court erred in finding that the provision at issue was an unenforceable penalty. In re First Union, 2018 WL 770401, at *9. In concluding so, the District Court relied on the rule promulgated by the New York Court of Appeals in Truck Rent-A-Ctr. v. Puritan Farms 2nd, 361 N.E.2d 1015, 1018-19 (N.Y. 1977), that a liquidated damages provision would not constitute a penalty provision as long as the amount stipulated by the parties as damages bears a reasonable relation to the amount of probable actual harm at the time of its execution. In re First Union, 2018 WL 770401, at *8.

Gegenheimer endeavors to distinguish In re First Union on the ground that the conveyance of the deed at issue was "part of an extensively negotiated, judicially-ordered settlement." Id. at *7. This argument is without merit because, under New York law, a "settlement agreement is a contract subject to principles of contract interpretation." Rainbow v. Swisher, 72 N.Y.2d 106, 109 (N.Y. 1988). The In re First Union court did not suggest that it applied anything other than ordinary contract interpretation principles under New York law in considering the enforceability of contractual provision at issue. Insofar as Gegenheimer suggests that the nature of contract at issue—namely, as the product of

18

judicially ordered settlement—affected the court's conclusion in In re First Union, that case still undermines Gegenheimer's contention that the rule of a liquidated provision granting an option to choose between the specified amount and pursuit of actual damages being per se unenforceable is well-defined and explicit.[5]

In sum, the collection of authority presented to the Panel contained: a 50-year old decision by a New York intermediate appellate court of questionable validity; a factually inapposite decision by the Second Circuit; and a decision by a court in this District in a case with different facts, coupled with an arguably conflicting decision by another court in the same District on an issue that requires a contextual inquiry.  Under the circumstances, Gegenheimer has failed to show that the Panel was aware of—or that there even existed—a law that was "well defined, explicit, and clearly applicable to the case," under which the LD Clause should have been held unenforceable.  See supra at 11.

---

[5]     Gegenheimer also cites Global Facility Mgmt. & Construction, Inc. v. Joe & The Juice Miami LLC, 63 Misc. 3d 1230(A) (N.Y. Sup. Ct. 2019).  However, this case is inapposite here because the court held that Florida law governed the contract at issue pursuant to the choice of law provision therein.  Id. Accordingly, aside from the significance of New York decisions cited by the Florida Supreme Court in the context of Florida law, any discussion of New York law is in dicta.

2. Deprivation of Gegenheimer's Allegedly Non-waivable Rights under California Business and Professions Code § 16600 by the Enforcement of the Contractual Choice of Law Provision

Gegenheimer next argues that the Panel manifestly disregarded the law by enforcing the Agreement's choice of law provision designating New York's law as the governing law and thereby effectively depriving Gegenheimer of the protections provided by Section 16600 to him as a California resident. Section 16600 provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Stated otherwise, Gegenheimer argues that the Panel manifestly disregarded the law in implicitly concluding that Gegenheimer was legally capable of contractually waiving his rights under Section 16600 through a choice of law provision. We disagree.

As it is apparent from our detailed discussion of the Award, the Panel considered and rejected this argument. See supra at 7-8. In support of this contention, Gegenheimer only cites Weber, Lipshie & Co. v. Christian, 52 Cal.App.4th 645 (Cal. Ct. App. 1997). In Weber, the defendant sought a rehearing on the ground that the New York choice of law provision, which the lower court applied in interpreting the restrictive covenant between the parties, was unenforceable because of Section 16600. Id. at 657. Although the Weber decision does contain some language that tends

to support Gegenheimer's contention, it could not serve as the source of a governing legal principle for the Panel because the Weber court eventually denied the defendant's petition based on his litigation conduct.  Id. at 659-60.  Accordingly, any discussion about Section 16600 in Weber is no more than dicta.

Although Gegenheimer's failure to cite any definitive authority proclaiming non-waivability of one's rights under Section 16600 in and of itself can defeat his attempt to vacate the Award based on the Panel's decision to enforce the Agreements' choice of law provision, for completeness, we nonetheless address Gegenheimer's challenge to the Panel's reliance on NuVasive, Inc. v. Miles, 2017-0720-SG, 2018 WL 4677607 (Del. Ch. Sept. 28, 2018). We find that the Panel did not manifestly disregard the law in relying on NuVasive; rather, NuVasive is an authority precisely on point.  Both during the arbitration and here, Gegenheimer argues that the New York choice of law provision could not be enforced because doing so would contravene "a fundamental policy in California that [Section 16600 rights are] not waivable by private agreement."  Resp't Mem. of Law (ECF No. 44) at 14.  The NuVasive court's inquiry was whether non-waivability of Section 16600 rights still remained as a fundamental policy in California for a subset of employees—namely, those represented by counsel in negotiations—in light of the recent passage of a new statute: Section 925.  As discussed above, Section 925 generally prohibits

enforcement of a contractual provision in an employment contract that would deprive an employee's rights under California Law.  See supra at 7-8.  However, the California Legislature provided an exception for a choice of law provision in an agreement entered into by an employee who was represented by his own legal counsel in negotiations.  Id.  Given the lack of clear authority on the contractual waivability of Section 16600 rights and the California legislature's expression of policy by enacting Section 925, the NuVasive court concluded that the California's policy was to allow an employee to consent to a choice of law provision as long as he had legal representation during negotiations.  NuVasive, 2018 WL 4677607, at *5-6.  Based on this conclusion, the court enforced the Delaware choice of law provision.  Id. at *6.  Gegenheimer's endeavor to distinguish NuVasive on the ground that Section 925 does not apply to the Agreement is unpersuasive because, like the Agreement, the contract at issue in NuVasive also was executed before Section 925 became effective on January 1, 2017.  Id. at *4.  The NuVasive court itself explicitly acknowledged that the court was referring to Section 925 solely for the purpose of its "significance to California's current fundamental policy interests."  Id. at *4.  Nowhere in its decision did the court suggest that it was enforcing the choice of law provision at issue pursuant to Section 925.

Gegenheimer alternatively challenges the Panel's consideration of NuVasive on the ground that it was reversed by the same court in a subsequent decision: NuVasive, Inc. v. Miles, 2017-0720-SG, 2019 WL 4010814 (Aug. 26, 2019) ("NuVasive II"). This contention fails for two distinct reasons. First, NuVasive II was decided on August 26, 2019, more than 4 months after the Panel issued the Award. Therefore, even assuming the accuracy of Gegenheimer's contention, NuVasive was still good law at the time of the Award. Second, contrary to Gegenheimer's characterization of it, NuVasive II did not reverse any part of the court's legal conclusions in NuVasive. NuVasive II was premised on the court's bench ruling of June 7, 2019 "that the Delaware choice of law provision at issue was unenforceable," which resulted from a new factual finding by the court. NuVasive II, 2019 WL 4010814, at *3 (Defendant "filed a Renewed Motion for Summary Judgement and pointed to persuasive evidence of record that he had not been represented by counsel during negotiation in California law to California's general prohibition on non-compete covenants had not in fact been implicated."). Nothing in NuVasive II suggests any change in the legal conclusions that the court reached in NuVasive.[6]

---

[6]     Despite Gegenheimer's criticism on the Panel's reliance on NuVasive, Gegenheimer has failed to cite any authority rejecting the NuVasive court's analysis of California's public policy.

Relatedly, Gegenheimer contends that the Panel manifestly disregarded the law by failing to consider the enforceability of the New York choice of law provision in the Agreement under California law.  We reject this contention on multiple grounds. First, Gegenheimer cites no authority to support the proposition that an arbitral panel is required to engage in a conflicts of laws analysis as if it were a court in California simply because the arbitration hearings were taking place in California.  Second, even assuming that it was required to engage in a conflicts of laws analysis, the Panel could reasonably have concluded that its "forum" for that purpose was New York.  It is recalled that the Agreement contains an unchallenged forum selection clause, designating New York as the venue for dispute resolution.  It was FINRA, relying on its own Rule 13213, that directed the hearings to take place in California.  However, that Rule simply addresses "hearing locations" and makes no mention of "forum."  See Award at 4; see also FINRA Rule 13213, available at: https://www.finra.org/rules-guidance/rulebooks/finra-rules/13213 (last accessed June 14, 2020).  As a New York tribunal, the Panel did not need to engage in the conflicts of laws inquiry under New York law because the choice of law provision in the Agreement provided:

> This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to its principles or rules of conflicts of laws, to the extent that such

> principles  or  rules  would  require  or  permit  the
> application of the law of another jurisdiction.

Agreement § V.I. (emphasis added).  Third, even if the Panel had
considered the enforceability of the choice of law provision in
the Agreement under California law, as argued by Gegenheimer, the
Panel  could  have  concluded  that  the  provision  at  issue  was
enforceable.  As conceded by Gegenheimer, "California courts will
apply the substantive law designated by the contracts unless 'the
application of the law of the designated state would be contrary
to a fundamental policy of the forum state.'"  Resp't Mem. of Law
(ECF No. 44) at 14 (citing Application Grp. V. Hunter Grp., 61
Cal.  App.  4th  881,  896  (Cal.  Dist.  Ct.  App.  1998)).   We  have
already concluded that, under the reasoning of NuVasive, the Panel
could reasonably have concluded that enforcing the New York choice
of  law  provision  would  not  contravene  a  fundamental  policy  of
California.  See supra at 20-22.  Thus, the Panel's decision to
enforce the New York choice of law provision does not amount to
manifest disregard of the law under the California's conflicts of
laws  rules.   Lastly,  even  if  the  Panel  erred  in  enforcing  the
choice of law provision at issue under the California's conflicts
of  laws  rules,  such  an  error  does  not  warrant  a  vacatur  of  the
Award.   See Abu Dhabi Inv. Authority v. Citigroup, Inc., 557 F.
App'x 66, 67-68 (2d Cir. 2014) ("ADIA contends that the panel erred
in its analysis of New York's conflict of law rules; but it would

25

not matter if it did.") (citing <u>E. Assoc. Coal Corp. v. United Mine Workers of Am., Dist. 17</u>, 531 U.S. 57, 62 (2000) ("[T]he fact that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision.") (internal quotation marks omitted)).

3. <u>Failure to Consider the LD Clause in Relation to New York Law and Policy</u>

Gegenheimer next argues that the Panel manifestly disregarded the law in concluding that the LD Clause was an enforceable restrictive non-compete covenant under New York law. This argument is a total construct: nowhere in the Award does the Panel suggest that it had ever considered the LD Clause as a non-compete covenant. In determining whether the LD Clause was enforceable, the Panel applied the legal standards applicable to a liquidated damages provision, not the standard to evaluate a non-compete covenant. <u>See</u> Award at 10. Gegenheimer's argument that the Panel itself found the LD Clause constituting a "restraint" overstates the Panel's statement in the Award:

> Although [the LD Clause] is styled as a liquidated damages provision and not as a restrictive covenant, [the LD Clause] significantly and materially impedes Gegenheimer in pursuing his lawful profession by imposing on Gegenheimer the obligation to pay $1,000,000.00 to Jefferies if he chooses to remain with his current employer or join another competitor of Jefferies. Accordingly, absent contrary superseding California law, [the LD Clause] would be void under Section 16600 because it constitutes a restraint.

Id. at 12.  This discussion is in the context of the Panel accepting Gegenheimer's argument that Section 16600 was applicable to the Agreement and reversing its earlier determination that Section 16600 did not apply at all.  As it is readily apparent from the quoted portion of the Award, the Panel's finding of the LD Clause constituting a "restraint" is limited to the purpose of Section 16600's applicability.

At bottom, Gegenheimer appears to argue that the Panel manifestly disregarded the law in failing to consider the LD Clause as a restrictive non-compete covenant in determining its enforceability under New York law.  This argument is wholly insufficient to vacate the Award.  The LD Clause differs from traditional non-compete covenants in that it was part of an agreement between an employee and his prospective, as opposed to a former, employer.  Despite this characteristic of the LD Clause, Gegenheimer has failed to cite any case in which a covenant between an employee and his prospective employer has been considered under the same standard that applies to covenants between an employee and his former employer.[7]  Therefore, Gegenheimer has failed to satisfy his burden for vacating the Award.

---

[7]      In support of his contention that the LD Clause "unquestionably operates as [a restrictive non-compete covenant]," Reps't Mem. of Law at 21, Gegenheimer cites BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388 (N.Y. 1999).  However, BDO Seidman is distinguishable because the contractual provision at issue in that case was a covenant between an employee and his former employer. 93 N.Y.2d at 388.  Moreover, it is conceptually difficult to regard the LD Clause as a non-compete covenant.  A breach of traditional non-compete covenant occurs when an employee engages in certain activities, such as working for a

4.  <u>Gross Disproportionality between the Amount of Liquidated Damages and Anticipated Loss</u>

Gegenheimer also challenges the Panel's conclusion that the specified liquidated damages amount of $1 million was reasonable with respect to the anticipated probable harm.  Specifically, Gegenheimer argues that, "by ignoring evidence and testimony to the contrary, the Panel manifestly disregarded New York law in enforcing [the Liquidated Damages Provision] and finding that $1,000,000 was not grossly disproportionate to Jefferies' probable

---

competitor of his former employer.  In contrast, a breach of the LD Clause is triggered by Gegenheimer's failure to join Jefferies by a date certain and not simply by working for Jefferies' competitors.

Gegenheimer appears to argue that the LD Clause should be considered as a non-compete covenant due to the Condition Clause, which limits the situations that would trigger the LD Clause to Gegenheimer's failure to join Jefferies in order to work for a competitor.  Even were we to assume that the LD Clause, combined with the Condition Clause, constituted an unenforceable non-compete covenant, there is a more than colorable justification for the Panel's decision.  In <u>BDO Seidman</u>, the New York Court of Appeals acknowledged that it "expressly recognized and applied the judicial power to sever and grant partial enforcement of an overbroad employee restrictive covenant." 93 N.Y.2d at 394.  Moreover, the Agreement itself provides that "any provision of this Agreement held to be excessively broad as to degree, duration, geographical scope, activity or subject, shall be construed by limiting and reducing it to be enforceable to the extent compatible with the application law."  Agreement § V.H.  Therefore, the Panel could simply sever subsection (b) of the Condition Clause and enforce the LD Clause as holding Gegenheimer liable only if he fails to join Jefferies for returning to Credit Suisse.  In the alternative, the Panel could strike the Condition Clause in its entirety and simply inquire into the enforceability of LD Clause as a liquidated damages provision, as it actually did.

Further, we reject the Gegenheimer's argument that the LD Clause is an "abomination" for excessively restraining employees from switching employers.  <u>See</u> Oral Arg. Tr. at 19-20.  The LD Clause could have any effect on Gegenheimer's job searching only because he voluntarily executed the Agreement after consulting his lawyers.  The facts, as found by the Panel, indicate that Gegenheimer had finalized most, if not all, of the material terms of his anticipated employment at Jefferies even before he was presented with a copy of the offer letter.  Until he executed the Agreement, Gegenheimer was under no restraint whatsoever.  It is difficult to understand why Jefferies should have no recourse and should be required to unilaterally bear the consequences that may result from its legitimate reliance on Gegenheimer's promise to join it on a date certain even though Gegenheimer remains free to search for a position with another employer while enjoying the benefit of having secured a position at Jefferies.

loss." Resp't Mem. of Law at 24.  In making this argument,
Gegenheimer stresses "Jefferies['] refusal to produce any evidence
of actual damages in discovery or present any evidence of actual
damages during either phase of the arbitration." Id. at 23-24.

Gegenheimer's argument is without merit because it is
predicated on an incorrect understanding of applicable legal
standard.  Under New York law, "[i]t is the party contesting a
liquidated damages provision that bears the burden of proffering
evidence that would allow a reasonable trier of fact to deny
enforcement of the provision as unconscionable." AXA Inv. Managers
UK Ltd. v. Endeavor Cap. Mgmt. LLC, 890 F. Supp. 2d 373, 388
(S.D.N.Y. 2012).[8]  Accordingly, the evidentiary burden was on
Gegenheimer, and Jefferies was under no obligation to present any
evidence to support the LD Clause's enforceability.  Based on the
record before it, the Panel found that "Gegenheimer has failed to
satisfy his burden of proof." Award at 5.  We decline to revisit
this conclusion by the Panel because "the Second Circuit does not
recognize manifest disregard of the evidence as proper ground for
vacating an arbitrator's award." Wallace v. Buttar, 378 F.3d 182,
193 (2d Cir. 2004).  We "may not conduct a reassessment of the

---

[8]     Similarly, the California law places the burden of proof on the
party seeking to invalidate a liquidated damages provision. See Cal. Civ. Code
§ 1671(b) ("a provision in a contract liquidating the damages for the breach of
the contract is valid unless the party seeking to invalidate the provision
establishes that the provision was unreasonable under the circumstances existing
at the time the contract was made.").

evidentiary record . . . upon the principle that an arbitral award may be vacated when it runs contrary to strong evidence favoring the party bringing the motion to vacate the award." <u>Id.</u> (internal quotation marks omitted).

     C.   **Attorneys' Fees**

Jefferies seeks to recover the attorneys' fees and costs that it has incurred in connection with this petition to confirm the Award, as provided in the Agreement. Gegenheimer's opposition to this request is entirely predicated on the alleged invalidity of the Award. <u>See</u> Resp't Mem. of Law (ECF No. 44) at 25. Because we grant Jefferies' motion to confirm the Award, we also grant Jefferies' request for the attorneys' fees and costs. Jefferies is hereby directed to submit within fourteen (14) days its application for fees and costs, supported by contemporaneous records organized in a manner that facilitates evaluation by the Court.

### III.   <u>Conclusion</u>

Respondent Gegenheimer has failed to establish that the Panel manifestly disregarded the law in rendering the Award.  Therefore, petitioner Jefferies' motion to confirm the Award is granted, and respondent Gegenheimer's cross-motion to vacate the Award is denied.  This Memorandum and Order resolves ECF Docket Entry Nos. 4 and 42.

   **SO ORDERED.**


Dated:   New York, New York
         June 17, 2020

                              _____
                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE